## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
:
ZBIGNIEW MATYSIAK,                              :          3:10-CV-01841 (CSH)
:
        Plaintiff,                       :
:
    v.                                   :
:
SPECTRUM SERVICES CO., INC. ET AL,              :
:
        Defendants.                      :          JANUARY 20, 2015
_____:

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Spectrum Services Company, Inc. ("Spectrum") and Matthew M. Shamas ("Shamas"), (collectively, the "Defendants"), by and through undersigned counsel, hereby submit this memorandum in support of their Partial Motion for Summary Judgment.  The material facts in support of the Motion for Summary Judgment are also set forth, as required by Local Rule 56(a), in a separate statement filed on this date.

## <u>TABLE OF CONTENTS</u>

I.    Introduction...............................................................................1

II.    Relevant Factual Background and Procedural History ...............................1

    A.    As an Independent Contractor, Matysiak Worked on Spectrum's Private Projects From Approximately 2000-2009...........................1

    B.    Matysiak Files Suit Alleging He Was Misclassified as an Independent Contractor and Worked On a Number of Spectrum Prevailing Wage Projects.........................................................4

    C.    Matysiak Alleges He Can Recover Unpaid Wage Damages For the Approximate Ten Years Predating the Filing of His Lawsuit ....................................................................5

    D.    Matysiak's Equitable Estoppel Allegations.......................................6

III.    Summary Judgment Standard of Review ....................................................7

IV.    Argument.................................................................................9

    A.    Summary of Argument.....................................................9

    B.    The Equitable Tolling and Estoppel Doctrines are Ready and Sparingly Used .................................................................12

    C.    The Equitable Tolling Doctrine is Inapplicable as Matysiak Was Well Aware of His Right to File an Unpaid Wage Claim.........13

    D.    Matysiak Cannot Invoke the Equitable Estoppel Doctrine For a Number of Reasons..........................................................15

        i.    Matysiak's Vague and General Misconduct Allegations Cannot Sustain His Use of the Equitable Estoppel Doctrine.............................................................16

        ii.    Matysiak Cannot, as a Matter of Law, Establish He Acted Reasonably in Passively Relying on Alleged Misrepresentations for Close to a Decade ..........................19

        iii    Defendants' Alleged Misrepresentations Are not the "Egregious Wrongdoing" Needed to Trigger Equitable Estoppel ............................................................25

        iv.    Matysiak Cannot Produce Admissible Evidence to Meet His Equitable Estoppel Burden...................................26

    E.    Matysiak Cannot Establish a Willful Violation of the FLSA and He Cannot Be Awarded Liquidated Damages on any FLSA Claim Because Government Agencies Found that Defendants Properly Classify Their Independent Contractors .......................................................28

V.    Conclusion .................................................................32

i

## I. __INTRODUCTION__

This Motion respectfully requests that the Court apply the statute of limitations expressly stated in the state and federal statutes upon which Plaintiff Zbigniew Matysiak ("Plaintiff" or "Matysiak") has brought suit in this unpaid wage misclassification dispute. Matysiak's Complaint requests relief under statutes with a **two year** recovery period. Defendants have pled the statute of limitations as an affirmative defense to these claims. Dkt. No. 63, at ¶ 63.  Nonetheless, Matysiak has alleged Defendants should be equitably estopped from raising the statute of limitations as a defense.  Plaintiff's equitable estoppel argument, however, fails as a matter of law and for a number of additional reasons.  As such, there is no basis to disregard the applicable statute of limitations and allow the Plaintiff to invoke the rarely and sparingly used equitable estoppel doctrine.

## II. __RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY__

### A. **As an Independent Contractor, Matysiak Worked on Spectrum's Private Projects From Approximately 2000-2009.**

Defendant Spectrum used Matysiak's services as an independent contractor and specifically as a painter from approximately 2000 to 2009.  Defendants' Local Rule 56(a)(1) Statement of Undisputed Material Facts ("SUMF"), at ¶5.  Defendant Spectrum, a painting subcontractor, works on both private and prevailing wage[1] construction

---

[1] Workers on certain Connecticut public works projects are entitled to a prevailing wage, which is a rate of pay set by the state Labor Commissioner so as to make sure "hourly wages commonly paid to construction workers in [an]area [are] maintained, and prevent[] the low bid requirements from reducing the market price for labor to levels that would disrupt the local economy."  *See http://www.ctdol.state.ct.us/wgwkstnd/prevailing-rates/PrevailingWageGuide/1intro.htm#Summary-Prevailing Wage Law.*

projects in Connecticut.  *Id.* at ¶1.  Defendant Spectrum employs approximately nine employees and nine independent contractors.  *Id.* at ¶3.  During Matysiak's tenure, Defendant Spectrum employed a similar number of workers.  *Id.*

Contrary to Matysiak's allegations, Defendant Spectrum did not employ him on any prevailing wage projects. SUMF, at ¶21-27.[2]  As a matter of general practice, Defendant Spectrum does not employ independent contractors on prevailing wage jobs. *Id.* at ¶22.  Spectrum employees and independent contractors, through affidavits, confirm that Matysiak never worked on prevailing wage projects.  *Id.* at ¶24.  Indeed, Matysiak claims to have worked on prevailing wage projects when Spectrum had one worker assigned to the project and that worker has confirmed Matyiak was not present. *Id.* at ¶25.  Matysiak also alleges to have worked on projects at a time Spectrum was not even working on the project, or worse, he claims to have worked on at least one prevailing wage project that Spectrum never even worked on.  *Id.*

Moreover, and while Spectrum used Matysiak's services, Matysiak filed tax returns stating he was "self-employed."  SUMF, at ¶11.  Spectrum paid Matysiak on a 1099.  *Id.* at ¶10.  On his tax returns, Matysiak took, among other things, motor vehicle deductions and deductions for purchasing his own equipment.  *Id.* at ¶12.[3]  Matysiak also bought his own equipment to paint, including brushes.  *Id.* at ¶9.  While completing work for Spectrum, Matysiak secured worker's compensation and/or liability insurance

---

[2] Matysiak worked on one prevailing wage project in error for one or two days.  SUMF, ¶23.  This project, however, took place before 2007.  *Id.*

[3] Matysiak took a deduction for a "spray machine" on his 2008 tax return, but he later admitted he never bought such a machine and that he filed a false tax return.  SUMF, at ¶13.

naming himself as insured, and his 2009 tax return includes a deduction for the purchase of this insurance.  *Id.* at ¶14.

In 2009, Defendants no longer had work for Matysiak and thus his services were no longer needed.  SUMF, at ¶19.  Matysiak did not file a claim for unemployment benefits after Defendants notified him his services were no longer needed.  *Id.* at ¶20.

Spectrum hires independent contractors to perform painting services but it does not supervise or otherwise dictate how the work must be done.  SUMF, at ¶8.  Spectrum does not discipline its independent contractors or require them to attend company meetings or take breaks during the workday.  *Id.* at ¶7.  Matysiak, like other Spectrum independent contractors, had the discretion to work for other companies while completing services for Spectrum.  *Id.* at ¶6.

State and federal government agencies have completed audits regarding, among other things, Spectrum's independent contractor and employee classifications.  SUMF, at ¶29.  Spectrum has cooperated with these investigations.  *Id.*  In June 2010, the Connecticut Department of Revenue Services ("Conn. DRS") completed a Withholding Tax audit on Spectrum for tax years 2005 to 2007.  *Id.* at ¶30.  The DRS concluded that Matysiak, as well as Spectrum's other independent contractors, were properly classified as independent contractors.  *Id.* at ¶31.  A 2011 U.S. Department of Labor Employee Benefits Security Administration investigation also revealed that Spectrum properly classifies its independent contractors, including Matysiak.  *Id.* at ¶¶32-34.  Thus, on two occasions, government agencies determined that Defendant Spectrum properly classified Matysiak as an independent contractor.  *Id* ¶35.

3

## B. Matysiak Files Suit Alleging He Was Misclassified as an Independent Contractor and Worked On a Number of Spectrum Prevailing Wage Projects

On November 24, 2010, Matysiak filed this unpaid wage action under both state and federal law asserting, among other things, that he was misclassified as an independent contractor and is entitled to overtime.  Dkt. Nos. 1, 53 *generally.*  Matysiak also alleges he is owed for work purportedly completed on a number of Spectrum prevailing wage jobs.  *Id.*  Matysiak filed suit against Spectrum and later amended his Complaint to name Shamas, Spectrum's President, as a defendant.

On March 15, 2011, Defendant Spectrum filed its answer, special defenses and counterclaim sounding in breach of contract and breach of good faith and fair dealing seeking, *inter alia*, recovery of the $20,000 that it paid Matysiak to resolve any outstanding disputes.  Dkt. No. 14.  Subsequently, Matysiak retained counsel and on July 8, 2013, he moved to amend his Complaint.  Dkt. No. 43.  The Court granted the motion on October 15, 2013.  Dkt. No. 52.  The Amended Complaint ("Complaint") contains allegations that Matysiak was Defendants' employee and was not paid fringe benefits, prevailing wages or overtime.  *Compl.* ¶¶ 12-46.  Defendants deny that Matysiak was an employee; Matysiak was an independent contractor.

Before the Court granted the motion to amend the Complaint, Defendants moved to dismiss Count III, the alleged CUPTA violations.  Dkt. No. 48.  The Court granted the motion on February 10, 2014, leaving only the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Connecticut overtime statute, Conn. Gen. Stat. 31-58 et seq. claim (Count One), and the claim alleging a Connecticut prevailing wage violation under Conn. Gen. Stat. § 31-53 (Count Two).  Dkt. No. 62.  On February 20, 2014,

4

Defendants filed an answer, affirmative defenses, and counterclaim to the Complaint.

Dkt. No. 63.  In their answer, Defendants asserted as their third affirmative defense that

"[s]ome or all of the plaintiff's claims are barred by the Fair Labor Standards Act, 29

U.S.C. §§201et seq. and/or Conn. Gen. Stat. §52-596, which provide that the look-back

period for wage claims is limited to two years."  *Id.* at p.5.

### C. Matysiak Alleges He Can Recover Unpaid Wage Damages For the Approximate Ten Years Predating the Filing of His Lawsuit

On June 4, 2014, Matysiak filed a Motion to Compel Answers and Responses to

his First Set of Discovery ("Motion to Compel").  Dkt. No. 70.  In essence, Matysiak was

seeking documents to support his argument that the statute of limitations should be

extended beyond the applicable two year limitation period.  Specifically, Matysiak was

requesting documents for his entire nine year tenure with Defendants.  *See generally id.*

Judge Margolis granted in part and denied in part Matysiak's Motion to Compel.[4]  Dkt.

No. 90.  The Court ordered a discovery period of five years, but because Defendant

Spectrum did not use Matysiak's services as an independent contractor in 2010, the

discovery period amounts to four years.  However, Judge Margolis also stated that:

> This Magistrate Judge must emphasize that it is not her role,
> in the context of ruling upon a discovery motion, to resolve
> the issue of whether the doctrine of equitable estoppel is
> applicable here, particularly in the absence of any evidence
> on this issue…. that issue will be resolved by Judge Haight
> either in the context of a summary judgment motion, after a

---

[4] Judge Margolis also ruled on Matysiak's Motion to Re-Open Discovery.  Dkt. No. 84.
The Court reopened discovery for the limited purpose that Defendant Spectrum provide
supplemental discovery responses in accordance with the Order by September 5, 2014.
Dkt. No. 90 at p.11.  The Court also allowed Matysiak to "depose defendant Shamas
and only if necessary, defendant Spectrum's managing agent" by September 26, 2014.
*Id.*

5

> fuller record has been developed following discovery on this
> issue…or perhaps at the trial itself.

*Id.* at 5-6 (citations and internal quotations omitted).

### D. Matysiak's Equitable Estoppel Allegations

This Motion requests that the Court enforce the statute of limitations under all Matysiak's remaining claims and thereby find in favor of Defendants' statute of limitation affirmative defense.  There is no basis to equitably toll or have Defendants estopped from raising the statute of limitations as an affirmative defense.

Matysiak's vague and unspecific allegations[5] pertaining to his efforts to cast aside the statute of limitations are found within his Complaint and briefing associated with his Motion to Compel.  Dkt. No. 53, ¶¶2, 37-45; Dkt. No. 70-1, at p.4-5, 12; Dkt. No. 81, at p.2-3.  In his Complaint, Matysiak alleges that "throughout his employment [from 2000-2009], [he] repeatedly asked defendant Matthew Shamas to pay him the prevailing wage on public works projects. Each time, Shamas responded that he would do so as soon as the plaintiff became a lawful permanent resident."  Dkt. No. 53, at ¶37.  On or about August 6, 2009, when Matysiak allegedly became a documented permanent resident, he asserts that he "demanded the promised prevailing wage" but instead Defendant Spectrum terminated him the next month.  *Id.* at ¶¶38-39.

Matysiak then allegedly started "collecting evidence for his lawsuit" but that in March 2010, he met with Defendant Shamas and agreed to return to work for "back pay," $20,000.00 ($4,000.00 payments spread out over five months), and a promise for additional work.  Dkt. No. 53, at ¶¶40-41.  Within a few days after the meeting, Matysiak

---

[5] Even Plaintiff admits he has only made a "general" allegation relating to equitable tolling and estoppel.  Dkt. No. 81 at p.2.

returned to work but only for four days.  *Id.* at ¶43.  Between March and August 2010, Defendant Spectrum paid Matysiak a total $20,000.00 but told him it had no work for him.  *Id.* at ¶44.  Matysiak alleges Defendant Spectrum terminated his employment in August 2010.  *Id.* at ¶45.  Matysiak filed this case in November 2010.

Contrary to Matysiak's allegation, Defendant Shamas *never* promised Matysiak increased wages or back pay for work completed on a prevailing wage project if and when Matysiak became a United States permanent resident, and Matysiak has not produced any evidence to substantiate this allegation.  SUMF, ¶21.  While performing work for Defendants, Matysiak produced documentation to them purportedly showing that he could legally work in the United States, including but not limited to a social security card and certificates of insurance.  *Id.* at ¶15.  Defendants always believed that Matysiak was a legally documented worker.  *Id.* at ¶16.  Matysiak, however, was not authorized to work in this country from 2000-2009, and Defendants were unaware of this fact until this litigation started.  *Id.* at ¶17.

In sum, Matysiak alleges Shamas' "repeated misrepresentations were calculated to induce the plaintiff to continue working for unlawfully low wages" and that his "actions *should serve to estop* the defendant from pleading the statute of limitations and to *equitably toll* the running of the statute on the plaintiff's claims."  Dkt. No. 53, at ¶ 2 (*emphasis added*); Dkt. No. 70-1, at p.4-5.  In this case, Matysiak has attempted to recover damages dating back to 2001, i.e. his entire period of providing independent contractor services to Spectrum.

### III.   SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Giordano v. City of New York*, 274 F.3d 740, 746 (2d Cir. 2001); *Lewis v. Town of Waterford*, 2006 U.S. Dist. LEXIS 58227, at *4 (D. Conn. Aug. 17, 2006). In ruling on a motion for summary judgment, this Court must assess whether there are any factual issues to be tried, resolving ambiguities and drawing reasonable inferences against the moving party. *See*, *e.g.*, *Knight v. U.S. Fire Ins. Co*., 804 F.2d 9 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987).  The court "may consider depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  *Joseph v. New York City Dep't of Corr.*, 2011 U.S. Dist. LEXIS 51690, at *2 (E.D. N.Y. May 13, 2011) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

On a motion for summary judgment, the moving party may prevail "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the [nonmovant's] case."  *Celotex Corp. v. Catreett*, 477 U.S. 317, 325 (1986).  The movant need not negate the nonmovant's claim.  *Id.* at 323.  Once the movant makes this showing, the nonmovant must do more than merely show there is some "metaphysical doubt" as to the material facts.  *Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmovant is required to go beyond the pleadings and, by affidavits or the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is some genuine issue for trial.  *Celotex*, 477 U.S. at 324*; Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d

8

Cir. 1997) (internal quotation marks and citations omitted) (stating a party opposing summary judgment "may not rest on conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful."). Thus, the non-moving party bears a heavy burden and may *only* avoid summary judgment by introducing evidence sufficient to create a material issue of fact and support a jury verdict in its favor. *Celotex*, 477 U.S. at 324-25.

The Second Circuit has repeatedly stressed the availability and virtue of summary judgment. In *Knight*, then Chief Judge Feinberg made it clear that the Second Circuit looks with favor upon summary judgment motions and expressed regret over any misperception that it does not. 804 F.2d at 12. This District has recognized that disfavor of summary judgment has been "jettisoned," and views the procedure as an "effective and correct method of avoiding protracted trials." *Nichols v. Planning & Zoning Comm'n of Stratford*, 667 F. Supp. 72, 74 (D. Conn. 1987).

## IV.   ARGUMENT

### A.  Summary of Argument

Matysiak's attempt to utilize the equitable tolling and/or estoppel doctrine to extend his two year recovery period on the remaining claims[6] in his Complaint should

---

[6] Even though this Motion only pertains to the applicable statute of limitations, Defendants stress Matysiak is not owed any wages. The majority of Matysiak's damages relate to his alleged prevailing wage work and not for overtime. Matysiak alleges to have worked on a number of Defendant Spectrum prevailing wage projects. Besides Matysiak's self-serving allegations, which are not even under oath, he has provided no evidence showing he worked on a single prevailing wage project. Matysiak, with the exception of one or two days, never worked on a Defendant Spectrum prevailing wage project. SUMF, ¶23. Defendants have secured affidavits from Defendants' employees and independent contractors demonstrating that Matysiak never worked on Spectrum prevailing wage projects at the time he alleges. *Id*. at ¶24.

be dismissed for at least **four** reasons.  **First**, Matysiak has not pled factual allegations sufficient to trigger the rarely and sparingly used equitable doctrines.[7]  With respect to his equitable estoppel argument, Matysiak's allegations are devoid of any specificity as to the dates, times, etc. that Defendant Shamas allegedly misrepresented facts that would allow him to sit on his rights and let week after week, and then year after year, pass by without diligently pursuing an unpaid wage claim.  Matysiak's equitable tolling and estoppel allegations cannot survive a Rule 12 motion, let alone a Rule 56 motion. **Second**, and assuming *arguendo* Matysiak sufficiently pled his equitable estoppel allegations, his attempt to use this exceptional doctrine still must be dismissed. Matysiak cannot establish two of the required elements.  He cannot prove "reasonable reliance" on any alleged misrepresentation and moreover, the alleged misrepresentations complained of do not amount to the "egregious wrongdoing" needed to support equitable relief.

  **Third**, and even if Matysiak is deemed to have adequately pled all the equitable estoppel elements with sufficient factual support, the discovery process has not produced a scintilla of admissible evidence that Matysiak can put forth to sustain his

---

In fact, Matysiak alleges to have worked on prevailing wage projects at a time the company itself was not working on the project or a time when only one of Defendant Spectrum's employees was on the prevailing wage project.  *Id.* at ¶24-25.  Matysiak even alleges to have worked on (and is attempting to recover for) a prevailing wage project that Defendant Spectrum never even worked on.  *Id.* at ¶25.  And with respect to his overtime claim, Defendants submit the evidence overwhelmingly demonstrates that Matysiak was properly classified as an independent contractor.  *Id.* at ¶¶5-20. Government agencies have already concluded that Spectrum properly classified Matysiak.  *Id.* at ¶¶29-35.

[7] It appears Matysiak has abandoned his equitable tolling argument, but even if he has not, this argument fails as a matter of law.

equitable estoppel burden.  For this reason alone, Matysiak's request to extend the statute of limitations should be dismissed.

And **fourth**, Matysiak cannot establish that Defendants willfully violated the FLSA.  As stated in the statute, a willful FLSA violation extends the recovery period to the three years predating the filing of a lawsuit.  Here, the fact that government agencies concluded Defendant Spectrum properly classifies their independent contractors, *including Matyisak*, precludes Matysiak from raising a dispute as to a material fact on his FLSA willfulness claim.  Moreover, the government agency findings also demonstrates that Matysiak, should he prevail on his FLSA claim, cannot be awarded liquidated damages on account of Defendant Spectrum's good faith efforts to comply with the FLSA.

In sum, Matysiak has not, and cannot, come close to establishing his equitable estoppel burden.  There is no credible reason to apply an exception to the statute of limitations expressly provided for in both the FLSA and Connecticut wage and hour laws.  This case does not represent an exception to the well-settled rule that statute of limitations be strictly adhered to in litigation.  *Archer v. Sullivan County*, 1997 U.S. App. LEXIS 33052, at *13-14 (6th Cir. Nov. 14, 1997) (citations and quotations omitted) ("the entire purpose of statutes of limitations is to provide finitude to liability for wrongs…statutes of limitations protect important social interests in certainty, accuracy, and repose" and should not be trivialized by "promiscuous application of tolling doctrines."); *Bernstein v. New York*, 591 F. Supp. 2d 448, 466-467 (S.D.N.Y. 2008) ("Statutes of limitations 'are found and approved in all systems of enlightened jurisprudence,' and with good reason.  Over time, evidence vanishes, memories fade,

11

witnesses disappear.  After sufficient time, 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.' Thus, 'strict adherence to limitation periods 'is the best guarantee of evenhanded administration of the law.'").

### B. The Equitable Tolling and Estoppel Doctrines Are Rarely and Sparingly Used

As an initial matter, it must be stressed that the equitable tolling and estoppel doctrines are not one in the same as they require separate and distinct elements to be proven.  Both doctrines, however, are <u>rarely and sparingly utilized</u>.  *See, e.g. Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990) (stating courts should employ equitable tolling "sparingly" and "only … in [ ] rare and exceptional circumstance[s]"); *Wallace v. Kato,* 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs"). The two doctrines are read into every federal statute, and "Connecticut courts have looked to the federal doctrines of equitable tolling and equitable estoppel for guidance" when deicing whether the doctrines apply.  *Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP*, 2003 Conn. Super. LEXIS 3247, at *48 (Conn. Super. Ct. Nov. 26, 2003).

In the unpaid wage context, equitable tolling applies when an employee, despite exercising due diligence, is unable to determine the circumstances giving rise to a wage claim.  On the other hand, an employer is equitably estopped from asserting the statute of limitations as a defense if its egregious and wrongful conduct was intended to and directly led to an employee's delay in bringing suit.  <u>Even though the focus in an equitable estoppel analysis is on the employer's conduct, the employee, as matter of equity, still must act reasonably to utilize the doctrine</u>.

12

For the reasons explained below, Matysiak cannot meet his burden on establishing the requisite elements for either the equitable tolling or equitable estoppel doctrine.

### C. The Equitable Tolling Doctrine is Inapplicable as Matysiak Was Well Aware of His Right to File an Unpaid Wage Claim

Matysiak's own conduct prevents him from utilizing the equitable tolling doctrine.[8] "To qualify for equitable tolling, the plaintiff must establish that [1] extraordinary circumstances prevented [him] from filing [his] claim on time, and that [2] he acted with reasonable diligence throughout the period he seeks to toll." *Parada v. Banco Indus. de Venez.*, 2014 U.S. App. LEXIS 5497, at *18-19 (2d Cir. Mar. 25, 2014) (quotation omitted); *see also Zerilli–Bdelglass v. New York City Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003) (*emphasis added*) ("[E]quitable tolling is only appropriate in *rare and exceptional circumstances* in which a party is prevented in some extraordinary way from exercising his rights.").[9]  Equitable tolling is applied when, among other things, a litigant

---

[8] In briefing before Judge Margolis on his Motion to Compel, Matysiak appears to have abandoned his equitable tolling argument.  In the reply brief in support of his Motion to Compel, Matysiak stated:  "But while the plaintiff made a general allegation in the Complaint that both equitable tolling and equitable estoppel apply in this case, he has only argued for equitable estoppel in the motion to compel."  Dkt. No. 81, at p.2.  In an abundance of caution, Defendants provide the Court with the reasons as to why Matysiak's equitable tolling argument fails.

[9] *See also Veltri v. Bldg. Serv. 32B–J Pension Fund,* 393 F.3d 318, 322 (2d Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances."); *Pearl v. City of Long Beach,* 296 F.3d 76, 85 (2d Cir. 2002) (citations omitted) ("[W]e will apply the equitable tolling doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights,' ... we made it clear that we had in mind a situation where a plaintiff 'could show that it would have been impossible for a reasonably prudent person to learn' about his or her cause of action.").

13

is not aware of a cause of action.  *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 323 (S.D.N.Y. 2001).

Matysiak's equitable tolling argument can be dismissed with ease.  The two equitable tolling elements amount to a finding that some extraordinary circumstance prevented a litigant, despite his/her due diligence, from discovering the <u>facts</u> giving rise to a potential cause of action.  *Cerbone v. ILGWU,* 768 F.2d 45, 48 (2d Cir. 1985) (citation omitted) (*emphasis added*) (stating that under equitable tolling, the statute of limitations does not begin to run until "the plaintiff either acquires actual knowledge of *the facts* that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice."); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 318 (S.D.N.Y. 2011) (internal citations and quotations omitted) (*emphasis added*) (same).

Throughout his time as an independent contractor, Plaintiff alleges he was well aware of the facts giving rise to a potential cause of action.  Indeed, Plaintiff states he constantly complained and alleged he was paid improperly.  *See e.g.*, Dkt. No. 53 at ¶¶ 2, 37.  His Complaint even alleges that he "began collecting evidence for his lawsuit" in or around September 2009, more than one year before he even filed suit.  Dkt. No. 53 at ¶40.  Defendants strenuously object to any allegation that Matysiak was improperly paid for his services, but Matysiak's deposition and allegations in his Complaint prevent him from arguing that despite his due diligence, *he was unaware of a cause of action*. SUMF, ¶28.  He himself claims he was always aware of the facts giving rise to a potential cause of action; he simply chose not to file one until 2010.  *Id.*  As such, Matysiak's own assertions and conduct demonstrates the fatal defect in his equitable

14

tolling argument. *Riddle v. Citigroup*, 449 Fed. App'x 66, 69-70 (2d Cir. 2011) (internal

citations and quotations omitted) ("Likewise, insofar as Riddle contends that she was

entitled to equitable tolling, her allegations belie any argument that she was unaware

that [s]he ha[d] a cause of action because of [Citigroup]'s fraudulent acts or

concealment.").[10]  This claim fails as a matter of law.

### D. Matysiak Cannot Invoke the Equitable Estoppel Doctrine For a Number of Reasons

Like equitable tolling, equitable estoppel is a rare and exceptional remedy that

courts sparingly invoke as statutes of limitations are generally upheld. *Statler v. Dell,*

*Inc.*, 841 F. Supp. 2d 642, 647 (E.D.N.Y. 2012); *Weber v. Geffen Records*, 63 F. Supp.

2d 458, 467(S.D.N.Y. 1999).  "Equitable estoppel arises if (i) the defendant made a

definite misrepresentation of fact, and had reason to believe that the plaintiff would rely

on it; and (ii) **the plaintiff reasonably relied** on that misrepresentation to her

detriment." *Riddle,* 449 Fed. App'x. at 69 (**emphasis added**) (citation omitted); *Glazer*

*v. Dress Barn, Inc.*, 274 Conn. 33, 59 (Conn. 2005) (stating "reasonable reliance" is an

equitable estoppel element); *Thibault v. Buckmiller*, 1990 Conn. Super. LEXIS 2142, at

*5 (Conn. Super. Ct. Dec. 18, 1990) (citation omitted) ("Reasonable reliance on the

misleading conduct and resulting detriment are also required.").  Specifically, equitable

---

[10] *See also Gustafson*, 171 F.Supp.2d at 323-324 ("[I]t is clear that plaintiff knew the *facts* that would comprise a cause of action under either the FLSA or New York law (that he was receiving straight pay for overtime) even if he did not know that he had a legal claim under those statutes. There is thus no basis for applying the doctrine of equitable tolling"); *Bassett v. Tennessee Valley Authority*, 2010 U.S. Dist. LEXIS 15000, at *16 (W.D. Ky. Feb. 22, 2010) ("The Court finds that Plaintiff possessed sufficient information to discover his claims under the FLSA. Plaintiff indicated that he had raised the issue of travel time compensation with his superiors in the past. If anything, these statements show that Plaintiff was at least aware of potential claims for compensation.").

15

estoppel applies when a litigant, despite having knowledge of a potential cause of action, acts reasonably but is lulled into not filing suit due to another litigant's egregious misconduct.  *Goodman*, 850 F. Supp. at 383.

Matysiak's vague and conclusory allegations cannot trigger use of the doctrine. But assuming Matysiak properly pled his estoppel allegations, he still cannot demonstrate his allegations meet two of the required elements.  Namely, the facts of this case, as alleged by Matysiak, illustrate that (1) he could not have "reasonably" relied on any alleged misrepresentation made by Defendant Shamas, and (2) the complained of misconduct does not meet the high bar of wrongful conduct needed to estop Defendants from asserting the statute of limitations as a defense.  Moreover, and despite the case pending for over four years, Matysiak has not produced any admissible evidence, let alone met his burden, on showing his equitable estoppel argument should be held over for trial.

> **i.   Matysiak's Vague and General Misconduct Allegations Cannot Sustain His Use of the Equitable Estoppel Doctrine**

The equitable estoppel doctrine is sometimes referred to the fraudulent concealment doctrine.  *See, e.g., Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1121 (9th Cir. 2006) ("Equitable estoppel, sometimes called fraudulent concealment…); *Sebelius v. Auburn Reg'l Med. Ctr.*,133 S.Ct. 817, 830 (2013) (Sotomayor, J., concurring) (stating the fraudulent concealment and equitable estoppel doctrines are related).  In fact, to invoke the equitable estoppel doctrine in an unpaid wage case, an employee has the burden to establish an employer's "<u>egregious wrongdoing</u>" and the "<u>active steps</u>" it took to prevent an employee from filing a claim.  *Price v. Fox Entm't*

16

*Group, Inc.*, 473 F. Supp. 2d 446, 455 (S.D.N.Y. 2007) (citation omitted) ("Equitable estoppel applies only where the plaintiff can show that egregious wrongdoing by a defendant prevented the plaintiff from bringing suit on a claim of which the plaintiff was aware."); *Singletary v. Continental Illinois National Bank and Trust of Chicago,* 9 F.3d 1236, 1240 (7th Cir. 1993) ("Equitable estoppel suspends the running of the statute of limitations during any period in which the defendant took *active steps* to prevent the plaintiff from suing.").[11] As such, vague and "general references" to alleged misdeeds cannot sustain an equitable estoppel argument. *Aslanidis v. United States Lines*, 7 F.3d 1067, 1075 (2d Cir. 1993) (affirming district court's decision granting summary judgment against a party asserting an equitable estoppel argument when the party made only "vague and general references" of alleged misdeeds); *Abercrombie v. College*, 438 F. Supp. 2d 243, 267 (S.D.N.Y. 2006) (granting a motion to dismiss an equitable estoppel claim when a "plaintiff fails to adequately plead the requisite facts in support of" equitable estoppel). Indeed, the equitable estoppel "egregious wrongdoing" requirement led one court in the circuit to proclaim it is more difficult for litigants to meet the equitable estoppel than it is the equitable tolling standard. *Weber*, 63 F. Supp. 2d at 467.

Here, Matysiak alleges that "each time" he asked for a higher wage, Defendant Shamas responded that he would do so once he became a documented worker. *See, e.g.,* Dkt. No. 53 at ¶37.[12] Matysiak does not allege a time, date, or place for any one of

---

[11] Connecticut courts similarly require such egregious or fraudulent conduct to sustain an equitable estoppel claim.

[12] Again, it must be stressed that Defendant Shamas never made any such

these alleged misrepresentations.  Matysiak does not provide any other additional

factual allegation that would support Defendant Shamas made any misrepresentation,

let alone one with an *intent* to prevent Matysiak[13] from filing a claim for owed wages.

Moreover, the vague and conclusory allegations on their face do not even

concern purportedly owed back wages.  Assuming for the sake of argument that the

Complaint's allegations are true, Matysiak did not allege that Defendant Shamas stated

he would pay him owed prevailing wage *back pay* for public works projects he had

allegedly worked on years ago.  Critically, a promise to pay a higher wage at a certain

time of course is entirely different than a promise to pay allegedly owed back pay with

the former not allowing a reasonable person to sit on his rights and refuse to file a claim

for owed back pay.  The Complaint only asserts that Defendant Shamas stated he

would pay Matysiak prevailing wages once he became a lawful resident, which, in the

ordinary sense, indicates that Defendant Shamas would pay Matysiak a higher rate

going forward and not pay Matysiak a prevailing wage on all the public works projects

he worked on since 2001.[14]  Most importantly, in his own deposition, Matysiak alleges

---

representation and in fact, it strains credibility to even allege that he did since Matysiak
produced documentation to him purportedly showing he was a documented worker.
SUMF, at ¶¶15-16,21

[13] Matysiak's Complaint only includes a boilerplate reference of Defendant Shamas'
alleged intent to deceive him.  Dkt. No. 53, ¶2.

[14] In fact, in his Motion to Compel, Matysiak suggests that Defendant Shamas' alleged
misrepresentations did not relate to any back pay, but instead concerned the prospect
of earning a prevailing wage once citizenship was obtained.  Dkt. No. 70-1, at p. 12
(*emphasis added*) (stating his "claim for equitable estoppel and tolling of the statute of
limitations is based in part on allegations that throughout Plaintiff's employment, he
repeatedly asked Defendant to be paid lawful wages. In response, *Defendant
repeatedly told Plaintiff that it could not pay him in accordance with wage payment laws
if Plaintiff was not a lawful permanent resident, but would do so as soon as Plaintiff got*

that when he talked to Defendant Shamas, he only talked about getting a "raise;" and not any allegedly owed back pay.  SUMF, ¶21.  The allegations, however, <u>even if they are construed to relate to owed back pay</u>, are nothing more than the vague and general misconduct references that are insufficient to sustain an equitable estoppel claim.  In summary, the equitable estoppel allegations are susceptible to a Rule 12 motion, let alone this Rule 56 motion.

> ### ii.     Matysiak Cannot, as a Matter of Law, Establish He Acted Reasonably In Passively Relying on Alleged Misrepresentations for Close to a Decade

Assuming Matysiak sufficiently pled a claim for equitable estoppel, he then must show that he "*reasonably*" relied on a misrepresentation so that his missing of hundreds and hundreds of deadlines can be excused.  *Riddle,* 449 Fed. App'x. at 69.[15]  Matysiak cannot establish such reasonable reliance.  His passive reliance and failure to act for close to a decade precludes him from invoking the rare and exceptional equitable estoppel doctrine.

A plaintiff must act reasonably in order to invoke an equitable remedy and "[a] plaintiff who unreasonably relies on the reassurances of a wrong-doer has not satisfied

---

*his green card*. Based on these promises, Plaintiff toiled at depressed wages for years. But shortly after informing Defendant that he received his green card, Plaintiff was summarily fired in September 2009. Based on these facts, Plaintiff has alleged that Defendant intentionally misrepresented its legal obligations as well as its intentions to reward Plaintiff's sacrifice with continued employment and higher wages.").  Statements in briefs can be considered judicial admissions that bind a party throughout litigation. *Censor v. ASC Techs. of Conn., LLC*, 900 F. Supp. 2d 181, 206 (D. Conn. 2012) (citation omitted).

[15] A claim for unpaid wages accrues *each week* the employee is underpaid.  29 C.F.R. 790.21.

this obligation of due diligence." *Netzer v. Continuity Graphic Assocs.*, 963 F. Supp.

1308, 1316 (S.D.N.Y. 1997) (citation omitted).  As the U.S. Supreme Court proclaimed,

"the party claiming the estoppel must have *reasonably relied on its adversary's conduct*

in that former "*did not know nor should it have known* that its adversary's conduct was

misleading... *Heckler v. Community Health Servs.,* 467 U.S. 51, 59 (1984) (*emphasis*

*added*); *Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 516 (N.D. Tex.

2001) (citation omitted) ("This is equivalent to a requirement of reasonable reliance,

because 'once the plaintiff knows or should have known of the deceit, reliance is no

longer reasonable.'"); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129  (4th Cir.

1987) ("It has always been an element of estoppel that the plaintiff actually and

reasonably  rely on the alleged misconduct in foregoing an assertion of his rights.").

Thus, a party cannot forgo an assertion of his/her rights by failing to exercise

reasonable diligence.  *Heckler*, 467 U.S. at 59-60, n.10; *Baldwin County Welcome*

*Center v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot

invoke equitable principles to excuse that lack of diligence."); *see also* In re *Hunt's Pier*

*Assocs.*, 143 B.R. 36, 45-46 (Bkrtcy. E.D.Pa. 1992) (citation omitted) ("Equitable

estoppel requires that the party asserting it take 'reasonable' steps to ascertain the truth

of the facts upon which it relies."); *Gore v. Colonial Penn Ins. Co.*, 335 F. Supp. 2d 296,

302 (D. Conn. 2004) (citation omitted) ("It is fundamental that a person who claims an

estoppel must show that he has exercised due diligence…");*State v. American News*

*Co.,* 152 Conn. 101, 114 (1964) ("It is fundamental that a person who claims an

estoppel must show that he exercised due diligence to know the truth and that he not

only did not know of the true state of things but also lacked any reasonable available

20

means of acquiring knowledge.").

That is, in order to reasonably rely on alleged misrepresentations, a party must exercise some type of due diligence as the "plaintiff's own failure to act" cannot be the cause of the plaintiff missing a filing deadline. *Datastaff Tech. Group, Inc. v. Centex Constr. Co.*, 528 F. Supp. 2d 587, (E.D. Va. 2007) (citation omitted); *Sang Lan v. Time Warner, Inc.*, 2013 U.S. Dist. LEXIS 56816, at *87-88 (S.D.N.Y. Apr. 19, 2013 (stating, in the context of New York's justifiable reliance element of an equitable estoppel claim, "[j]ustifiable reliance requires a showing that the plaintiff used due diligence to detect the misrepresentation").  If a plaintiff's due diligence would have made him aware of the alleged misrepresentation and deceit, a basis for the estoppel no longer exists and the plaintiff must exercise his rights.

Here, and even assuming Matysiak's alleged basis for the estoppel is true, which it is not, Matysiak has not, and cannot, prove that he reasonably relied on such alleged representations for the better part of a decade.  There is no evidence in the record that Matysiak reasonably relied on these alleged misrepresentations.  More importantly, a litigant cannot reasonably act and thereby exercise due diligence by passively relying on alleged deceptive statements for close to ten years without exerting any type of effort to ascertain the truth of the deceptive statements.  *See, e.g., Stuart v. Stuart*, 2013 U.S. Dist. LEXIS 175270, at *17-18 (S.D.N.Y. Dec. 10, 2013) (granting motion to dismiss on statute of limitation grounds and stating "[i]f a plaintiff is on notice of potential wrongdoing but takes no steps to investigate further, equitable estoppel does not apply because of a failure of diligence…Even if [Defendant's]1998 promise of forthcoming equal distribution, and his subsequent excuses for not making any such distributions,

21

reasonably lulled Plaintiff for a time, when years went by with no follow-through a reasonably diligent plaintiff would have undertaken some inquiry"); *Abercrombie*, 438 F. Supp. 2d 243 at 267("Without any allegations of diligent action on Plaintiff's behalf, Plaintiff cannot rely on equitable estoppel.").  Indeed, any reasonable plaintiff exercising due diligence simply would not have slumbered on his rights for years, especially when the plaintiff believes that he has been underpaid or otherwise treated unfairly for years and years. *See e.g., Smallwood v. Liberty Mut. Ins. Co.*, 2000 U.S. Dist. LEXIS 2624, at \*26-27 (D.N.H. 2000) (rejecting employee's bid for equitable modification in discrimination suit and finding any reliance on a promotion promise from employer to be unreasonable as employee believed she was being discriminated against for years).

In essence, continued reliance on the same empty promise year after year is not reasonable.  *See, e.g., Weber*, 63 F. Supp. 2d at 466-467 ("An entirely unexceptional string of empty promises, defendants' alleged deceptions would not have deterred a reasonably diligent plaintiff. Just as they do not meet the standards of equitable tolling, they all the more clearly do not meet the more restrictive standards of equitable estoppel because due diligence is not satisfied by passive reliance upon an allegedly deceptive statement."); *Kregos v. Associated Press*, 3 F.3d 656, 661 (2d Cir. N.Y. 1993) ("Kregos argues that equitable tolling is also warranted due to Sports Features false representation that it would send more work to Kregos if he delayed suit. We cannot conclude that the district court abused its discretion by holding Kregos's continued reliance on these empty promises was unreasonable and without justification.").

A 2012 federal court opinion is illustrative of this point.  *See Smith v. Assocs. in Behavioral Counseling, P.C.*, 2012 U.S. Dist. LEXIS 150527 (S.D. Ind. Oct. 19, 2012).

In *Smith*, the employee alleged that her employer, a partnership, made promises of an equity stake in the partnership that would "override" any owed overtime payment under the FLSA and state law. *Id.* at *15. The employer also alleged that it could not pay overtime as it "needed to financially rebound." *Id.* at *18. As a result of these statements, the employee alleged the equitable estoppel doctrine should allow her to collect on otherwise untimely wage claims. The court rejected the equitable estoppel argument and limited her recovery to, as called for in the FLSA and state statute, to the two years predating the filing of the lawsuit. *Id.* at *19-20. The employee was terminated in May 2009, a time when it became clear the employer would not pay overtime, but she did not file suit until May 2011. *Id.* at *19.

The court held the employee should have pursued a claim *before* May 2009 as "Plaintiff began working for Defendants in 2005…[and] [w]hile *Defendants may have affirmatively misled Plaintiff, it should have become apparent sometime during Plaintiff's four-year tenure and after many promises went unfulfilled that it was time to seek legal recourse*." 2012 U.S. Dist. LEXIS 150527, at *19 (*emphasis added*) (citing *Redman v. U.S. West Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998)); *see also Comm Trade USA, Inc. v. INTL FCStone, Inc.*, 2014 U.S. Dist. LEXIS 26112, at *22-25 (S.D.N.Y. Feb. 26, 2014) (ruling on summary judgment motion and holding a plaintiff did not meet the "high bar for equitable estoppel" while enforcing a one year contractual statute of limitation because a party's reliance on alleged continuous promises for a few years that payments were forthcoming was objectively unreasonable); *Vadino v. A. Valey Engineers*, 903 F.2d 253, 263 (3d Cir. 1990) (dismissing employee's equitable estoppel argument and holding it is "patently unreasonable" for an employee to rely on an

23

employer's promises to pay back wages "made some four or five years after [employer's] original [promise to pay] and more than a year after he left [employer's] employ").

Based on the above case law, Matysiak's equitable estoppel argument must fail as he cannot establish *reasonable reliance* on any purported misrepresentation.  This doctrine can only be invoked if Matysiak's reliance on Defendant Shamas's alleged promises of payment for close to a decade was reasonable.  It was not.  Matysiak failed to exercise any due diligence in forgoing his rights by passively relying on these alleged misrepresentations.  Indeed, week after week for approximately nine years, he received a payment that he now alleges to be less than what he otherwise was owed.  By allegedly complaining he was owed wages, Matysiak was aware he had a cause of action and was contemplating to file one,[16] but instead of brining suit, he allowed himself to miss filing deadline after filling deadline for his unpaid wage claims by relying on the same alleged promise to pay year after year after year.  *Mercado-Garcia v. Ponce Federal Bank*, 979 F.2d 890, 895-96 (1st Cir. 1992) (rejecting equitable estoppel claim based upon allegedly false promise to settle because "it is something less than 'reasonable' for a party contemplating litigation to allow itself to miss filing deadlines in 'reliance' upon such cajoling from the opposing party").

Matysiak did not even bring suit for more than *a year* after he allegedly became a U.S. citizen.  Such conduct cannot meet the stringent requirements of equitable estoppel and allow for a recovery outside the limitation period expressly written into federal and Connecticut wage and hour laws.  Like the plaintiff in *Smith*, "*it should have*

---

[16] He originally filed this action *pro se*.

24

*become apparent sometime during [Matysiak's] [nine]-year tenure and after many promises went unfulfilled that it was time to seek legal recourse.*"  2012 U.S. Dist. LEXIS 15052, at *19-20.  Because Matyisak cannot be found to have reasonably relied on alleged misrepresentations and exercise the necessary due diligence, these facts do not warrant an exception to the applicable statute of limitations.  Matysiak's recovery period must be the two years predating the filing of the lawsuit, or three years for his FLSA claim if he can establish a willful violation.  *Kotec*, 321 F. Supp. 2d at 433 ("Equitable estoppel principles have not saved untimely actions where induced delay did not justify the extent of plaintiff's subsequent slumber…); *Weber*, 63 F. Supp. 2d at 467 (citation omitted) (citing cases) ("due diligence is not satisfied by passive reliance upon an allegedly deceptive statement.").

### iii.    Defendants' Alleged Misrepresentations Are Not the "Egregious Wrongdoing" Needed to Trigger Equitable Estoppel

Besides Matysiak's inability to demonstrate the requisite reasonable reliance to support his equitable estoppel claim, his attempt to disregard the statute of limitation fails for another reason.  The alleged misrepresentations Matysiak purports to rely on are not the type of "egregious misconduct" that can trigger use of the equitable estoppel doctrine.

As explained above, Matysiak must prove Defendants engaged in "egregious wrongdoing" and took "active steps" to prevent him from filing a lawsuit.  *See supra,* p. 16-17*.*  Specifically, courts have found a defendant's "affirmative misrepresentations as to the length of the limitations period," or a promise not to plead the statute of limitations as a defense, or the defendant's destruction or hiding of evidence sufficient to trigger

25

use of the doctrine. *Kotec*, 321 F. Supp. 2d at 433 (citation omitted); *see also Mando v. C.A.L. Realty Group, Inc.*, 2007 U.S. Dist. LEXIS 42361, at *13-14 (S.D. Miss. June 11, 2007) (internal quotations and citation omitted) (*emphasis added*) ("The plaintiff bears the burden of presenting facts which, if true, would require a court as a matter of law to estop the defendant from asserting the statute of limitations…The doctrine of equitable estoppel … requires that a defendant take *active steps* such as destruction of evidence or promises not to plead the statute of limitations as a defense.").

Here, Matysiak only alleges that Defendant Shamas' promises to pay him the prevailing wage "were calculated to induce" him to work for "unlawfully low wages." Dkt. No. 53, ¶¶2, 37; Dkt. No. 70-1, at p.2. Matysiak does not allege that Defendant Shamas destroyed evidence or that he misrepresented the length of any applicable statute of limitation. Matysiak only alleges, in conclusory fashion, that the same representations made year after year of increased wages were calculated to prevent him from filing a case for back wages.[17] Simply put, and even making all reasonable inferences in Matysiak's favor, the complained of misconduct is not the "egregious wrongdoing" needed to sustain an equitable estoppel claim that would allow a litigant to completely sidestep the applicable statute of limitations.

### iv.     Matysiak Cannot Produce Admissible Evidence to Meet His Equitable Estoppel Burden

---

[17]It must be stressed that any misrepresentation by Defendant Shamas must have been made with the intent to deceive. Although Defendant Shamas vehemently denies making any such promise of increased wages once Matysiak became a U.S. citizen, a finding that such statements were made does not automatically equate with a finding that Defendant Shamas intended to deceive Matysiak.

The Court should also dismiss Matysiak's equitable estoppel argument because he has not provided any admissible evidence to support his theory.  It is well-settled that self-serving allegations in pleadings, or even affidavits, on a disputed issue cannot stave off summary judgment.  *Ziemba v. Thomas*, 390 F. Supp. 2d 136, 141 (D. Conn. 2005) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) ("A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment."); *Zelenika,* No. 09 2946, 2012 U.S. Dist. LEXIS 101784, 2012 WL 3005375, at *11 (N.D. Ill. July 23, 2012) ("Plaintiffs' mere impression that their pay could be docked for such absences, supported only by affidavits lacking  necessary foundation, is not sufficient to overcome Defendant's motion for summary judgment") (citing *Keri v. Bd. of Trs. of Purdue Univ.,* 458 F.3d 620, 628 (7th Cir. 2006) ("Conclusory allegations and self-serving affidavits, if unsupported by the record, will not preclude summary judgment.")); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant").  Despite the case pending for over four years, the record is devoid of any admissible evidence that would support a triggering of an equitable doctrine. Further, Matysiak has not, and could not, produce any evidence demonstrating his reliance on Defendant Shamas' misrepresentations was reasonable or that he exercised the necessary due diligence in ascertaining the truth of Defendant Shamas' statements.

Indeed, the evidence supports that Defendant Shamas never promised he would pay Matysiak increased wages once he became a documented worker.  Matysiak

consistently produced documentation to Defendants demonstrating he was already a documented worker.  SUMF, at ¶¶14-17, 21.  Nevertheless, it is clear that Matysiak has not produced nor can he point to any admissible evidence that would come close to establishing his equitable estoppel burden.

> **E.  Matysiak Cannot Establish a Willful Violation of the FLSA and He Cannot Be Awarded Liquidated Damages on any FLSA Claim Because Government Agencies Found That Defendants Properly Classify Their Independent Contractors**

For the reasons explained above, Matysiak's recovery period, should he prove he is an "employee" or can otherwise recover damages, must be limited to the time frame provided for in the FLSA and the Connecticut unpaid wage laws.  Matyisak's overtime and prevailing wage claim under Connecticut state law is limited to two years. Conn. Gen. Stat. § 52-596.[18]  Matysiak's FLSA overtime claim is limited to two years unless he can prove the Defendants willfully violated the statue.  29 U.S.C. § 255(a). Even if Matysiak could establish damages under the FLSA, which he cannot, his recovery period is limited to two years on account of government agencies concluding Defendants properly classified their independent contractors.  These government findings not only preclude Matysiak from recovering willful damages, but they also establish that Matyiak cannot recover any liquidated damages should he prevail on his

---

[18] The time period is only tolled upon the filing of a claim with the state Labor Commissioner.  No such claim was filed in this matter, and Matysiak admits as much in his deposition.  SUMF, at ¶28; Conn. Gen. Stat. § 52-596; *see also Andrade v. Kwon*, 2012 U.S. Dist. LEXIS 106571, 10 (D. Conn. Mar. 26, 2012) ("CMWA [Connecticut Minimum Wage Act] has a two year statute of limitations for any violation, including a reckless or willful disregard for the law"); *Levin v. Vitas Health Care Servs. Corp.*, 2011 Conn. Super. LEXIS 2385 (Conn. Super. Ct. Sept. 19, 2011) (finding unpaid wage claims under state law to be governed by two-year limitation period in Conn. Gen. Stat. § 52-596).

FLSA claim.

Under the FLSA, the employee has the burden to show willfulness, and "[a]n employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Young v. Cooper Cameron Corp.,* 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "Mere negligence is insufficient." *Young*, 586 F.3d at 207. Moreover, "[i]f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful. If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then it should not be considered willful…" *McLaughlin*, 486 U.S. at 135 n.13.

On the other hand, FLSA liquidated damages can be awarded to an employee upon the finding of a violation. Employers can, however, avoid a liquidated damages penalty if it demonstrates it acted in good faith. *See* 29 U.S.C. § 260 ("…if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award…"). "[T]o meet its statutory burden under section 260, [employer] must demonstrate that (1) the act giving rise to the violation was in good faith and (2) the [employer] had reasonable grounds to believe that its act was not a violation of the FLSA. The good faith part of the test is subjective while the reasonableness part is objective." *Horan v. King County, Div. of Emergency Medical Services*, 740 F. Supp. 1471, 1481 (W.D. Wash. 1990).

53035936 v1

In summary, an <u>employee</u> carries the burden in proving a willful violation and thereby extending the recovery period to three years, but it is the <u>employer's</u> burden to show it acted in good faith and should not have to pay liquidated damages if a FLSA violation occurred.

Matysiak has not produced any evidence raising a dispute as to a material fact that Defendants willfully violated the FLSA.  Matysiak has to prove that Defendants intended, or acted with reckless disregard, in not paying him overtime in violation of the statute.  Matysiak's willful conclusory allegations are insufficient at the summary judgment stage.  *Edwards v. City of New York*, 2011 U.S. Dist. LEXIS 97134, at *14-15 (S.D.N.Y. Aug. 26, 2011) (citations omitted) ("To show willfulness, plaintiffs rely solely on the conclusory assertions in their complaint.  They have not identified any evidence that defendant had actual knowledge of or acted with reckless disregard for its obligations under the FLSA… Accordingly, defendant's motion is granted and a plaintiff may only recover for claims that accrued no earlier than two years before the plaintiff joined this action…"); *Kim v. Suk Inc.*, 2014 U.S. Dist. LEXIS 28316, at *19 (S.D.N.Y. Mar. 4, 2014) (citations omitted) ("Proof of willfulness requires a 'factual showing' of an employer's knowing or reckless violation of the FLSA.").

More importantly, it is undisputed that two different government agencies concluded that Defendant Spectrum properly classified Matysiak and its other independent contractors.  SUMF, at ¶¶ 29-35.  This type of evidence not only precludes Matysiak from showing Defendants willfully[19] violated the FLSA, but it also justifies a

---

[19] Admittedly, the issue of whether an employer willfully violated the statute is not always ripe for summary judgment but courts are more likely to grant summary judgment on

denial of any liquidated damages to Matysiak should he establish an FLSA violation. *See, e.g., Horan,* 740 F. Supp. at 1475, 1481-82 (concluding employer did not willfully violate statute and denying FLSA liquidated damages when employer relied on, among other things, a DOL determination that employees were exempt); *Scott v. Raudin McCormick, Inc.*, 2010 U.S. Dist. LEXIS 92902, at *10-16 (D. Kan. Sept. 7, 2010) (granting summary judgment on willfulness issue because even though the employer was cited by the DOL on two occasions for overtime violations, the employer assessed its compliance with the FLSA through communications with the Department of Labor during two formal investigations); *Zachary v. Rescare Oklahoma, Inc. and ResCare, Inc.*, 471 F. Supp. 2d 1183, 1190, 1193 (N.D. Okla. 2006) (ruling on summary judgment motion that "[d]efendants cannot be found to be in reckless disregard of their obligations under the FLSA because they were, at all relevant times, in possession of a letter from the DOL stating that their conduct at Oklahoma operations did not violate the FLSA" and then refusing to allow a liquidated damages recovery on the same basis); *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, LTD*., 246 F. Supp. 2d 886, 2003 U.S. Dist. LEXIS 2778 (S.D. Ohio 2003) (citing *Miller v. Kansas Power & Light Co.,* 585 F. Supp. 1509, 1515 (D. Kan. 1984) (declining to award liquidated damages when the defendant, in good faith, acted in accordance with a DOL investigation that determined that the defendant had not violated federal law)) ("Federal courts have determined that an employer acts in good faith so as to justify denying liquidated damages when the

---

this issue in misclassification cases. *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 391 (E.D.N.Y. 2012) (citing cases) ("In those instances where courts have found a lack of willfulness at the summary judgment stage, the FLSA violation was due to a misclassification of the plaintiff as being exempt.").

31

employer relies on representations or decisions of the DOL that the employer's conduct does not violate the FLSA."); *Kautsch v. Premier Communs.*, 2008 U.S. Dist. LEXIS 14327, at *11 (W.D. Mo. Feb. 26, 2008) (citation omitted) ("A letter received as a result of a DOL investigation may sustain a defense of good faith reliance against a claim for liquidated damages").

Government agencies confirming that the Defendants properly classified their independent contractors preclude an argument that they were willful in misclassifying workers.  In fact, the government findings demonstrate that Defendants have acted in good faith in making their classifications so that an FLSA violation should not result in an additional penalty of liquidated damages.[20]  Moreover, Matysiak has not, and cannot, produce any evidence showing Defendants willfully violated the FLSA in not paying him overtime.  As such, Matyisak can only recover damages for the two years predating the filing of his lawsuit, and if he does establish a violation, he cannot be awarded liquidated damages.

## V.    CONCLUSION

For all the reasons stated herein, Defendants respectfully request the Court grant this Partial Motion for Summary Judgment.

---

[20] Connecticut state law leaves the issue of liquidated damages to the court's discretion. Conn. Gen. Stat. § 31-72.  Matysiak should not be awarded any liquidated damages under his state law claim, if he so prevails, for the same reasons that he cannot be awarded FLSA liquidated damages.

32

Respectfully submitted,


THE DEFENDANTS


By:  /s/ *Lisa A. Zaccardelli* ct07983 _____
Lisa A. Zaccardelli (Bar No. ct07983)
HINCKLEY, ALLEN & SNYDER LLP
20 Church Street-18[th] Floor
Hartford, CT  06103-1221
Telephone: (860) 331-2702
Facsimile: (860) 278-3802
lzaccardelli@hinckleyallen.com



By: /s/ *Brendan J. Lowd* _____
Brendan J. Lowd, Esq. (*Pro Hac Vice*)
Federal Bar No.: phv06579
HINCKLEY, ALLEN & SNYDER, LLP
28 State Street
Boston, MA  02109
(617) 378-4270
(617) 345-9020 (Fax)
blowd@hinckleyallen.com


33

## CERTIFICATE OF SERVICE

        I hereby certify that on January 20, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties of record by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.


                        /s/ Brendan J. Lowd_____

34