UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZBIGNIEW MATYSIAK,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW M. SHAMAS and SPECTRUM SERVICES COMPANY INC.,<br><br>Defendants. | ) | Case No. 3:10-cv-01841-GWC |

**OPINION AND ORDER RE:**
**DEFENDANTS' AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**
**(Docs. 101 & 106)**

Plaintiff Zbigniew Matysiak brings this action against his former employer, Spectrum Services Company, Inc., and its owner, Matthew M. Shamas, to recover wages that defendants allegedly failed to pay him over an eight-year period when he worked for Spectrum as a painter. Matysiak alleges violations of the overtime wage provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 as well as the Connecticut Minimum Wage Act (CMWA), Conn. Gen. Stat. §§ 31-53; 31-76c. Defendants filed counterclaims for breach of contract and breach of the implied warranty of good faith and fair dealing, claiming that Matysiak's lawsuit violates a settlement contract previously reached by the parties.

Defendants have filed a motion for partial summary judgment asserting that under both the FLSA and the CMWA, Matysiak may only recover damages for the two years prior to the date he filed his lawsuit. Matysiak has filed his own motion for partial summary judgment seeking a declaration that he was an employee—rather than an independent contractor—when he worked for defendants, and that defendants are therefore liable for their admitted nonpayment of overtime.

## I. Facts

The following facts are drawn from the parties' statements of material facts and are undisputed except where noted.

Spectrum is a painting contractor that works on private and public construction projects. Matthew Shamas is Spectrum's president. Spectrum currently employs approximately nine employees and nine independent contractors. It employed a similar number when Matysiak worked there. (Doc. 119 at 1.)

Matysiak worked for Spectrum from March 2001 to September 2009. He claims that he was an employee. He denies working for anyone else during this period. He was paid by the hour. He received a paycheck each Wednesday for work performed the previous week, on the same schedule as workers whom Spectrum identifies as "employees." (Doc. 113 at 5.) He maintains that he received the same level of supervision as any other worker. He says that he worked "a set schedule" from 7:00 a.m. to 3:30 p.m., Monday through Friday, with a half-hour break at noon for lunch. He often worked past 3:30 p.m. or on the weekends, but only when he was instructed to do so by the Spectrum superintendent. He was required to fill out and submit a weekly timesheet at the end of each workweek. (Doc. 107 at 2-3.)

Matysiak claims that he frequently worked more than forty hours per week and was never paid overtime. (*Id.* at 2.) Defendants admit that Matysiak did not receive overtime pay, but deny that he was entitled to it. (Doc. 63 ¶ 26.)

Spectrum maintains that Matysiak was an independent contractor. Spectrum reported Matysiak's income to the IRS on a 1099 form. Spectrum alleges that it hired Matysiak to paint, but did not dictate how he should perform the work. Spectrum alleges that Matysiak was free to work for other companies while providing services to Spectrum on a contract basis. Spectrum alleges that Matysiak was not subject to discipline by Spectrum, not required to attend company meetings, and not required to take breaks during the workday. Spectrum further maintains that Matysiak used his own tools and supplies. (Doc. 119 at 2-3.)

Matysiak admits that he purchased his own paintbrushes while working for Spectrum, but denies providing other equipment. Matysiak filed tax returns while working for Spectrum which

stated that he was self-employed. He took deductions for purchasing his own painting equipment and supplies. He also secured his own worker's compensation and liability insurance naming himself as the insured. His 2009 tax return includes a deduction for the purchase of this insurance. He also took thousands of dollars in vehicle deductions. (*Id.* at 3-4.)

Matysiak was not authorized to work in the United States from 2000 to 2009. In 2009, he became a permanent resident. Defendants maintain that they always believed that Matysiak was a documented worker, and that he showed them documents indicating he could work legally in the United States. Matysiak denies this, stating that he only showed them a certificate of insurance in 2008 and his permanent resident card in 2009, and that defendants knew he was undocumented prior to then. (Doc. 119 at 4-5.)

The CMWA requires that workers be paid a "prevailing wage" if working on certain public projects. Conn. Gen. Stat. § 31-53. This rate was typically one-and-a-half to two times the rate that Spectrum paid Matysiak. (Doc. 53 ¶¶ 18-34.) Matysiak maintains that Spectrum did not pay him the prevailing wage when he worked on such projects. (*Id.*) Spectrum maintains that it only employed Matysiak on private projects, and that it generally does not employ independent contractors on prevailing wage jobs. (Doc. 119 at 6-7.) According to Spectrum, due to an error, Matysiak worked on a prevailing wage project on a single occasion for one or two days sometime prior to 2007. (*Id.*)

Matysiak alleges that "[a]t various times throughout my employment, I asked Matthew Shamas to pay me prevailing wages on public works projects. Each time, Shamas responded that he could not do so while I was undocumented but would pay me prevailing wages as soon as I got my green card." (Doc. 119-1 ¶¶ 14-15.)

In his complaint, Matysiak asserted claims under the overtime pay provision in the FLSA, 29 U.S.C. § 207, the overtime pay provision in Conn. Gen. Stat. § 31-76c, the prevailing wage provision of Conn. Gen. Stat. § 31-53, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110g. This court previously dismissed Matysiak's CUTPA claim for failure to state a claim. (Doc. 62.)

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Defendants' Motion for Partial Summary Judgment on Statute of Limitations Defense

Defendants seek partial summary judgment in their favor, arguing that Matysiak is barred by the FLSA and its Connecticut counterpart from recovering more than two years' worth of damages. (Doc. 106.)

An action for unpaid overtime compensation under the FLSA must be brought within two years after the cause of action accrued, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Similarly, an action for unpaid wages or overtime brought under the CMWA must be brought within two years after the cause of action accrues. Conn. Gen. Stat. § 52-596. The limitations period is tolled upon the filing of a complaint with the Labor Commissioner, *see id.*, but no such claim was filed in this case. (Doc. 119 at 8.)

An action under the FLSA for unpaid overtime accrues "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21. The court predicts that this rule applies to claims under Connecticut law as well. *See Powanda v. Inteplast Grp., Ltd., L.P.*, No. 3:14cv846, 2015 WL 4078117, at *2 (D. Conn. July 6, 2015) (predicting that Connecticut Supreme Court would allow plaintiff to pursue wage claims under Connecticut law for two-year period prior to filing of his complaint). Matysiak filed suit on November 24, 2010. Under the plain language of the statutes, then, he may seek recovery for unpaid wages for two years prior to that date under the CMWA, and up to three years prior to that date under the FLSA if he can prove that a willful violation occurred.

**i. Whether Equitable Tolling Applies to Matysiak's Claims**

Matysiak argues that the limitations period should be equitably tolled because defendants failed to post statutorily required notices in violation of 29 C.F.R. § 516.4, and because defendant Shamas told Matysiak that he could not legally pay him prevailing wages until he got his green card.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). It is "an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004); *see also Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."). Under the doctrine of equitable tolling, the statute of limitations "does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) (quotation omitted). Courts have applied equitable tolling where it would have been impossible for the plaintiff to learn of the cause of action, or where the defendant concealed the cause of action. *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir. 1990); *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985).

Matysiak asserts in an affidavit filed in response to defendants' motion for summary judgment that "[d]uring my employment on public works projects, Spectrum did not post and keep posted in a prominent place at the job site a notice stating that persons performing work on the project are covered by the prevailing wage or a notice listing the relevant prevailing wages as determined by the Labor Commissioner." (Doc. 119-1 at 2.)

Accepting Matysiak's statement as true, it does not support application of the equitable tolling doctrine. Failure to post required wage-and-hour notices is insufficient to toll the FLSA statute of limitations. *See Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012)

(holding that failure to post required FLSA notices "is not by itself sufficient to warrant equitable tolling; plaintiff must also show that she had not received notice of her rights through any other avenue"). Matysiak has not cited any Connecticut case establishing a more stringent rule under the CMWA. From Matysiak's own assertions, it is clear that he believed he was being underpaid the entire time that he worked for defendants. He says that he "repeatedly" asked defendant Shamas to pay him the prevailing wage. He therefore knew the facts that could support his claim, even if he did not know that he had a cause of action under the FLSA or Connecticut law. *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 323 (S.D.N.Y. 2001) (declining to apply equitable tolling because it was "clear that plaintiff knew the facts that would comprise a cause of action under either the FLSA or New York law (that he was receiving straight pay for overtime) even if he did not know that he had a legal claim under those statutes.").

### ii. Whether Defendants Are Equitably Estopped from Asserting the Statute of Limitations

Matysiak further argues that defendants should be equitably estopped from applying the statute of limitations because defendants told Matysiak that they could not pay him prevailing wages on public works projects while he was undocumented but would do so once he got his green card. There was no basis for this assertion on the part of defendants. The legal rate of pay for a worker does not depend upon his or her immigration status. *See* Conn. Gen. Stat. § 31-53 (stating that prevailing wages must be paid to "*any* mechanic, laborer or worker" on qualifying public works projects (emphasis added)); *see also Flores v. Amigon*, 233 F. Supp. 2d 462, 463 (E.D.N.Y. 2002) ("[A]ll employees, regardless of their immigration status, are protected by the provisions of the FLSA.").

"[Equitable] estoppel arises if (i) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (ii) the plaintiff reasonably relied on that misrepresentation to his detriment." *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 56 (2d Cir. 2003) (quotations omitted); *Conn. Nat'l Bank v. Voog*, 659 A.2d 172, 179 (Conn. 1995). A defendant may be equitably estopped from asserting the statute of limitations where the plaintiff knew he had a cause of action but the defendant's misconduct caused the plaintiff to delay filing suit. *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995).

Matysiak alleges that defendants provided him with false reasons why they could not pay him prevailing wages while holding out the promise that they would do so once he became a lawful permanent resident, thereby causing him to delay bringing this action. (Doc. 118 at 8.) Matysiak further alleges that when he became a lawful permanent resident on August 6, 2009, he showed Shamas his "green card" and demanded the promised prevailing wage, but Shamas instead terminated him on September 25, 2009. (Doc. 119-1 at 3.)

The court accepts as true for the purposes of summary judgment the assertion that defendant Shamas orally misrepresented to Matysiak that he would be paid prevailing wages on public works projects once he received his green card. Matysiak asserts that Shamas repeated this misrepresentation to him multiple times over the years. He says that each time he asked Shamas to pay him prevailing wages, Shamas increased his hourly rate by one or two dollars an hour. (Doc. 102-4 at 24-25.) Matysiak alleges in his complaint that his hourly pay was increased in 2003, 2004, 2005, and twice in 2007. Accepting Matysiak's assertion that Shamas raised his pay every time he demanded the prevailing wage, this means that Matysiak was aware that he was being underpaid as early as 2003 and that Shamas's alleged misrepresentations began around that time.

"It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." *Voog*, 659 A.2d at 179 (quotation omitted). Matysiak has failed to show that he exercised due diligence in learning about his rights under the CMWA. It was unreasonable for him to delay bringing suit for over six years when he was aware that he was being underpaid and did not attempt to learn whether he had a cause of action. *Gallop v. Commercial Painting Co., Inc.*, 612 A.2d 826, 828 (Conn. 1992) (holding that estoppel did not toll statute of limitations where defendant gave misleading information about its agent for service of process; plaintiff had alternate means of service readily available); *see also Redman v. U.S. W. Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998) (holding that defendant employer was not estopped from asserting FLSA statute of limitations where "appellants had every opportunity to ask their Union representatives and/or legal counsel to address their concerns long before the statute of limitations had run"). Matysiak was clearly

able to learn this information, as he alleges that he "began gathering evidence for his lawsuit" immediately after he was terminated. (Doc. 53 ¶ 40.)

The sole case relied upon by Matysiak in support of his estoppel argument, *Wall v. Construction & General Laborers' Union, Local 230*, 224 F.3d 168, 176 (2d Cir. 2000), is inapplicable. In *Wall*, the defendant labor union promised the plaintiffs that they could become union members again if they were referred for employment. The union then tried to prevent the plaintiffs from being referred. When the plaintiffs were referred for work, they were denied membership. The Second Circuit held that the union was equitably estopped from asserting the statute of limitations defense because the plaintiffs reasonably relied on the union's promise that it would readmit them and delayed bringing suit. *Id.* Unlike *Wall*, it was unreasonable for Matysiak to rely upon Shamas's alleged misrepresentations for over six years without investigating to see if it was in fact true that he could not be paid the prevailing wage as an undocumented worker.

Matysiak has failed to show that equitable tolling or equitable estoppel applies to his case. Defendants' motion for partial summary judgment on their statute of limitations defense is therefore granted in part, with the following condition.

**iii. Willful Violation of the FLSA**

As noted above, the statute of limitations for FLSA claims is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Defendants argue that there is no evidence that they willfully violated the FLSA and therefore Matysiak is only entitled to recover two years' worth of damages if he proves his FLSA claim.

A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). The employee has the burden of showing willfulness. *Young*, 586 F.3d at 207. Whether an employer willfully violated the FLSA is an issue typically left to the trier of fact. *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008).

Defendants admit that they never paid Matysiak overtime. (Doc. 63 ¶ 26.) They argue, however, that Matysiak was never entitled to overtime because he has always been an independent contractor. (*Id.*) Because the FLSA overtime provision only applies to "employees," independent contractors are not entitled to overtime pay under the FLSA. *See* 29 U.S.C. § 207(a); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988). As discussed below, whether Matysiak was an employee or an independent contractor is an issue that cannot be resolved on summary judgment. For this reason, the court cannot decide at this time whether defendants willfully violated the FLSA. Defendants' motion for summary judgment on this issue is denied without prejudice to their right to raise the issue again at trial.

### C. Plaintiff's Motion for Summary Judgment That He Was An Employee Entitled to Overtime Pay

Matysiak seeks partial summary judgment in the form of a ruling that he was an employee rather than an independent contractor and that defendants are liable to him as a matter of law for unpaid overtime under both the FLSA and the CMWA.

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" means "to suffer or permit to work." *Id.* § 203(g). These definitions are broad, "in accordance with the remedial purpose of" the FLSA. *Brock*, 840 F.2d at 1058. The CMWA contains nearly identical definitions for these terms as the FLSA, *see* Conn. Gen. Stat. § 31-58(d)-(e), and is construed similarly. *Roto-Rooter Servs. Co. v. Dep't of Labor*, 593 A.2d 1386, 1390 n.8 (Conn. 1991).

In determining whether an individual is an employee or an independent contractor under the FLSA, courts apply the "economic reality test," which looks at five factors. These are:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock*, 840 F.2d at 1058-59.

The court cannot resolve the issue of whether Matysiak was an employee or an independent contractor at the summary judgment phase because the relevant facts are disputed.

For example, the parties dispute how much control Spectrum exercised over Matysiak's work. Matysiak asserts that he only worked for Spectrum, that he was required to work a set schedule from 7:00 a.m. to 3:30 p.m. with a half-hour break for lunch, that he received the same supervision as other employees, that he was required to fill out a time sheet, and that he bought none of his own supplies other than paint brushes. (Doc. 107-1 at 1-3.) In support of these assertions, he provides his own testimony and affidavit, along with a form letter stating Spectrum's policies for employees and a blank timesheet. There are no completed timesheets in the record.

Defendants deny each of these assertions. Defendant Shamas asserts in an affidavit that Spectrum did not assign Matysiak a set schedule or require him to take breaks at specified times, and that Matysiak was free to work for other companies. (Doc. 113-1 at 4.) He stated that Spectrum did not supervise Matysiak or tell him how to perform tasks, such as how many coats of paint to apply. (*Id.* at 3-4.) He denies that Spectrum ever disciplined Matysiak as it would other employees. He further denies that Matysiak ever filled out a time sheet. (Doc. 113-2 at 4.) Defendants also point to Matysiak's tax returns from 2005 to 2009, which state that Matysiak is self-employed. (Doc. 113-4 at 7-42.) Each year, he took significant tax deductions for business-related supplies such as protective clothing, uniforms, and vehicle expenses. During the same period, Spectrum reported Matysiak's income on a 1099 form rather than a W-2. (*Id.*) Defendants note that Matysiak purchased his own liability insurance and was not provided with employee fringe benefits or safety training required for employees. (Docs. 119 at 4; 113-1 at 4.) Finally, both the Connecticut Department of Revenue Services and the U.S. Department of Labor determined in the course of investigations related to wage withholding and retirement plan contributions that Matysiak was properly classified as an independent contractor. (Doc. 19 at 10.)

These and other facts are genuinely disputed and are material to the issue of whether Matysiak was an employee or an independent contractor under both the FLSA and the CMWA.[1]

---

[1] The parties appear to disagree over whether the court should apply the "economic reality test" or the "ABC test" to determine Matysiak's status as an employee or independent contractor under Connecticut law. (Docs. 106-1 at 15; 112 at 26.) The court need not resolve this issue because the facts surrounding the parties' employment relationship are genuinely in dispute, precluding summary judgment under either test.

Resolving the factual disputes will require an assessment of each party's credibility. Such assessments are reserved to the trier of fact. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010); *see also Evans v. MassMutual Fin. Grp.*, 856 F. Supp. 2d 606, 610 (W.D.N.Y. 2012) (denying summary judgment on issue of whether plaintiff was employee under FLSA because underlying facts about his relationship with employer remained in dispute). Accordingly, Matysiak's motion for summary judgment on this issue is denied.

For the same reasons, the court denies Matysiak's motion for summary judgment on the issue of whether defendant Shamas is personally liable under the FLSA and the CMWA for any alleged violations.[2] It would be premature to decide this issue before determining whether Matysiak is actually covered by the FLSA and the CMWA.

The court denies defendants' request to impose sanctions upon Matysiak's attorney for filing his motion for partial summary judgment. (Doc. 112 at 33.) Although the court has not ruled in Matysiak's favor, it does not find the motion to be unreasonable or vexatious, and consequently no sanctions are warranted. *See* 28 U.S.C. § 1927.

---

[2] Matysiak has also not put forth sufficient evidence to show that he is entitled to summary judgment on this issue. Like the question of whether an individual is an employee under the FLSA, determining whether an individual is an "employer" under the FLSA requires an examination of the "economic reality" of the relationship. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). The court must inquire into a number of factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). Matysiak relies solely upon the fact that Shamas owns the company. However, the Second Circuit has held that ownership alone is insufficient to establish that an individual is an "employer" under the FLSA. *Irizarry*, 722 F.3d at 111.

## III. Conclusion

For the above reasons, defendants' motion for partial summary judgment is GRANTED IN PART, except that summary judgment is denied on the issue of whether defendants willfully violated the FLSA. (Doc. 101.) Plaintiff's motion for partial summary judgment is DENIED. (Doc. 106.) Defendants' request for sanctions is DENIED. (Doc. 112.)

Dated this 17th day of August, 2015.

/s/
Geoffrey W. Crawford, Judge
United States District Court